IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARGARET DEPALMA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 3:15-cv-297 |
| vs. | ) | |
| | ) | |
| | ) | |
| UNITED STATES AIR FORCE | ) | Judge Thomas M. Rose |
| | ) | |
| Defendants. | ) | |

**DECISION AND ENTRY GRANTING DEFENDANT UNITED STATES AIR FORCE'S MOTION FOR SUMMARY JUDGMENT, DOC. 15, AND TERMINATING CASE.**

Plaintiff Margaret DePalma ("DePalma") filed suit against Defendant United States Air Force ("USAF"), alleging sex discrimination and reprisal arising out of a decision to remove her from employment on March 26, 2014. (Doc. 1.) This Court has jurisdiction over DePalma's claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et. seq*.

Pending before the Court is USAF's Motion for Summary Judgment against both claims (Doc. 15), brought pursuant to Fed. R. Civ. P. 56(b). The motion is now fully briefed and ripe for a decision. Because DePalma failed to establish that a similarly situated worker not in a protected class was treated more favorably than her, USAF is entitled to summary judgment on DePalma's sex discrimination claim. USAF is also entitled to summary judgment on DePalma's reprisal claim because DePalma failed to establish a causal connection between her submission of an Equal Employment Opportunity ("EEO") claim and USAF's decision to place her on a Contribution Improvement Plan ("CIP") and eventually to remove her from employment. This

1

Court, therefore, **GRANTS** Defendant USAF's motion for summary judgment and dismisses the case with prejudice.

I.      **FACTUAL AND PROCEDURAL HISTORY**

DePalma began her position as a Historian in the Air Force Research Laboratory History Office ("AFRL History Office") at Wright-Patterson Air Force Base ("WPAFB") on November 21, 2010. (Doc. 15 at PageID# 42.) She was the only female Historian at the time she was hired. (Doc. 17 at PageID# 264.) The AFRL History Office requires its Historians to comply with Air Force Instruction 84-101 ("AFI 84-101"), an approximately sixty-page publication that provides guidance and procedures for collecting historical data and documentation, preparing historical materials, and providing historical services. (Doc. 15, at PageID# 42.) DePalma was aware of her duty to abide by AFI 84-101 when she began her employment (Doc. 17 at PageID# 266-67), and had experience complying with its provisions for approximately five years without failure in her prior job as a Historian at Whiteman Air Force Base in Johnson County, Missouri. *Id.*

DePalma's duties at WPAFB were to research and write historical narratives concerning cutting-edge developments in science and technology, a subject matter DePalma had little experience working with during her time at Whiteman Air Force Base. (Doc. 17, at PageID# 266.) For the first three months on the job, DePalma's supervisor, Joseph Marchese ("Marchese"), did not assign any major writing assignment to DePalma. (Doc. 17-4, at PageID# 336-38.) Marchese stated that it was standard protocol to give new historians a "learning period" during which they could explore the facilities, get to know their new colleagues, and familiarize themselves with onsite project developments. *Id.* The learning period was viewed as essential to prepare new historians to write about complex science and technology issues. *Id.* Because

DePalma was somewhat new to the subject matter, she frequently asked Marchese questions about her work. (Doc. 17, at PageID# 266.) For the most part, Marchese either answered the questions directly or told her to look up the answers herself by using the facility's resources. *Id*.

In DePalma's first performance assessment on May 24, 2011, Marchese told DePalma that she needed to become more familiar with the technical subject matter of the AFRL and that her written work needed to reflect more of her own thoughts, rather than those of the "authors of original documentation." (Doc. 15, at PageID# 42.) Specifically, Marchese directed DePalma to rewrite what she could of a chapter she had written for Fiscal Year 2011 AFRL Annual History because it allegedly used quotes in a manner that did not comply with AFI 84-101. *Id*. Marchese thereafter issued a Memorandum documenting the incident and filed it in DePalma's Employee Work Folder. *Id*.

In the same month of May, Marchese told another AFRL Historian, Frank Kalesnik ("Kalesnik"), that he had submitted plagiarized work for the Fiscal Year 2011 AFRL Annual History. (Doc. 15, at PageID# 44.) After speaking with Kalesnik about how to address the issue, Marchese filed a Memorandum regarding the incident, like he did for DePalma. *Id*. Marchese gave both Kalesnik and DePalma time to rewrite their works so that he could eventually approve them for the annual history. (Doc. 15, at PageID# 43-44.) Both Kalesnik and DePalma voiced disagreement over Marchese's assertions of plagiarism, but Marchese maintained his position and continued to direct Kalesnik and DePalma to revise their work. *Id*.

After receiving Marchese's Memorandum on May 12, 2012, DePalma filed a workplace grievance requesting that the Memorandum be removed from her Employee Work Folder. (Doc. 15, at PageID# 43.) DePalma claimed that the Memorandum was unnecessary because Marchese failed to address a "routine editorial matter" with her informally before taking administrative

action. *Id*. On June 21, 2012, the AFRL Chief of Staff, Colonel Eugene Henry, sustained DePalma's grievance and directed that the Memorandum and any reference to it be removed from DePalma's folder. *Id*. Meanwhile, Kalesnik took similar steps to address Marchese's reports of plagiarism. (Doc. 17, at PageID# 268.) Eventually, however, Kalesnik left WPAFB in November 2012 to accept a higher ranked position as Command Historian with the United States Marines in North Carolina. *Id*.

On October 26, 2012, DePalma submitted a draft outline for the Fiscal Year 2012 AFRL Annual History. (Doc. 15, at PageID# 43.) Approximately one month later Marchese again informed DePalma that her written work was unacceptable because it plagiarized. *Id*. Marchese specifically commented that (1) several paragraphs were copied without the use of quotation marks or indentations; (2) some of the documents cited in the footnotes did not substantiate the assertions made in the paragraphs; (3) several paragraphs lacked footnotes where footnotes were required; and (4) some of the written chapters contained factual errors. (Doc. 15-8, at PageID# 87.)

On November 21, 2012, DePalma asked Marchese for a more exact accounting of the problems he had found in her draft chapters, and five days later Marchese responded with an email pointing out paragraph by paragraph where revisions were needed. (Doc. 15-8, at PageID# 87-88.) Marchese gave DePalma three weeks to revise her draft in accordance with his comments. (Doc. 15, at PageID# 43.)

On December 13 and December 20, 2012, DePalma met with Colonel Jon Yost, her second level supervisor, to discuss the comments that Marchese had given her. (Doc. 15, at PageID# 44.) Deputy Chief of Staff, Ricardo Negron, was in attendance at both meetings. (Doc. 15, at PageID# 44.) During one of the meetings, Colonel Yost asked DePalma why she did not

follow Marchese's guidance in regards to her written drafts, and DePalma replied that she did not understand the guidance. (Doc. 15, at PageID# 44.) After Colonel Yost attempted to explain Marchese's comments to her, DePalma stated that she remained uncertain about what she was being told and continued to request information from Marchese and Colonel Yost. (Doc. 17, at PageID# 259.)

On January 2, 2013, DePalma received an annual performance evaluation that documented the negative reviews she had received from Marchese in regards to plagiarism. (Doc. 15, at PageID# 45.) DePalma responded by filing a second internal grievance, seeking to get the report removed from her Employee Work Folder. *Id*. By this time, Colonel Henry had retired and was replaced by Colonel Negron. (Doc. 17, at PageID# 259-60.) On February 20, 2013, Colonel Negron issued a grievance decision stating that a Meeting of Managers ("MOM"), a group composed of several high-level managers, had determined that her performance review would not be changed. (Doc. 15, at PageID# 45.)

In March 2013, DePalma received feedback from Marchese that she again submitted plagiarized work product. (Doc. 15, at PageID# 46.) DePalma requested more exact guidance and answers, and Marchese responded with emails on April 1, 2013 and April 18, 2013 that specified lines and paragraphs where revisions were required. (Doc. 15, at PageID# 46.) Marchese also called DePalma into his office on April 19, 2013 to inform her that her weekly activity reports were unacceptable. (Doc. 15-27, at PageID# 221.) Immediately after the meeting DePalma sent herself an email that summarized the encounter and remarked that "[Marchese] will place me on a Performance Improvement Plan." (Doc. 15-27, at PageID# 221.)

On April 30, 2013, DePalma filed an informal EEO Charge at WPAFB, alleging that Marchese was discriminating against her based on her sex. (Doc. 17, at PageID# 260.) DePalma

5

asserted that she and her written submissions were being reviewed differently because she is female. (Doc. 17, at PageID# 264-65.) For example, DePalma claimed that in comparison to her male colleagues, she was excluded from staff meetings, offered less bonus money, and treated less cordially during her orientation and first few months on the job. (Doc. 17, at PageID# 264.)

On May 8, 2013, a MOM decided to place DePalma on a Contribution Improvement Plan ("CIP"), a program designed to help WPAFB employees produce more suitable work product. (Doc. 15, at PageID# 47.) DePalma's CIP began on May 15, 2013 and was scheduled to run until July 28, 2013, but was extended to July 31, 2013. *Id*. By the end of the CIP, DePalma was required to submit a final essay for a MOM to evaluate. *Id*. Based on the evaluation, DePalma would either proceed with her original employment or get removed. *Id*.

While training, DePalma filed a formal EEO Charge on June 24, 2013. (Doc. 17, at PageID# 261.) She alleged that Marchese placed her on the CIP in retaliation for her earlier informal EEO Charge filed on April 30, 2013. *Id*. Although she disagreed with her placement on the CIP, DePalma proceeded with the training and submitted a final essay by the CIP deadline. *Id*.

On August 6, 2013, a MOM determined that DePalma failed to successfully complete the CIP because they found that a large portion of her final essay was plagiarized and thus unacceptable. (Doc. 15, at PageID# 47.) Approximately three months later DePalma received a Notice of Proposed Removal based on her failure to demonstrate an adequate level of contribution commensurate with her compensation level during the CIP period. (Doc. 15, at PageID# 48.) DePalma was officially removed from her position on March 26, 2014. *Id*.

DePalma filed a Complaint of sex discrimination and reprisal against USAF in this Court on August 26, 2015. (Doc. 1.) In response, USAF filed a Motion for Summary Judgment on May 11, 2017, arguing that DePalma failed to establish a prima facie case for both her sex

discrimination and reprisal claims. (Doc. 15.) DePalma responded by filing a Response to USAF's Motion for Summary Judgment on May 31, 2017, (Doc. 17.) and USAF filed a Reply to DePalma's Response on June 14, 2017. (Doc. 18.)

## II. STANDARD OF REVIEW – MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine disputes as to any material facts, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Wright v. Murray Guard*, 455 F.3d 702, 706 (6th Cir. 2006); Fed. R. Civ. P. 56(a). A fact is material if, under the substantive law, it is identified as a fact that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-movant." *Id*.

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material facts. *Celotex*, 477 U.S. at 322-23; *Wright*, 455 F.3d at 706. The movant can discharge this initial burden by citing particular facts in the record, including depositions, documents, affidavits or declarations, interrogatory answers, admissions, or other materials, that demonstrate the absence of any genuine dispute as to any material fact, and that the movant, as a result, is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. The movant may rely on any of the evidentiary sources listed in Rule 56(c) to negate any of the essential elements of the Plaintiff's claims, or may merely rely upon the failure of the Plaintiff to produce any evidence which would create a genuine dispute for the jury. *Cox v. Ky. Dep't of Transp.*, 53 F.3d

146, 149 (6th Cir. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

If the movant satisfies this initial burden, then the burden shifts to the non-movant to produce evidence that presents a genuine dispute of material facts as to the essential elements of his claim. *Cox*, 53 F.3d at 150. The opposing party must present some significant probative evidence that makes it necessary to resolve material facts at trial; he or she cannot rely on mere allegations, conjectures or speculations to defeat summary judgment. *Celotex*, 477 U.S. at 324; *Wright*, 455 F.3d at 706 (quoting *Anderson*, 477 U.S. at 249-50). The movant is entitled to summary judgment if the opposing party fails to make a sufficient showing regarding any essential element of the claim on which he or she has the burden of proof. *Celotex*, 477 U.S. at 322-323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). "[T]he mere existence of a scintilla of evidence in support of [the non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for [the non-movant]." *Anderson*, 477 U.S. at 252. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the opposing party, summary judgment should be granted in favor of the movant. *Street*, 886 F.2d at 1480 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III.    ANALYSIS

**A. Sex Discrimination**

DePalma argues that USAF's motion for summary judgment must be denied because there is a genuine dispute as to whether DePalma was treated differently based on her sex than similarly situated male Historians. (Doc. 17, at PageID# 264.) USAF contends that its motion for

summary judgment should be granted because (1) DePalma has not met her burden of establishing a prima facie case of sex discrimination (Doc. 18, at PageID# 572.), and (2) even if she could, USAF had legitimate, non-discriminatory reasons for its employment action to remove her. (Doc. 15, at PageID# 52.)

### 1. Prima Facie Case of Sex Discrimination

In an employment discrimination case under Title VII, DePalma first must establish a prima facie case that she was unlawfully discriminated against based on her sex. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). To establish a prima facie case of unlawful discrimination, DePalma must establish that: (1) she was a member of a "protected class;" (2) she was subjected to an adverse employment action; (3) she was qualified for the job; and (4) a similarly situated worker not in a protected class was treated more favorably than her or that she was replaced by a person outside the protected class. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240-44 (6th Cir. 2005).

Here, there is no disagreement over whether DePalma has met the first three elements of the *McDonnell Douglas* test. However, DePalma and USAF disagree over whether similarly situated male Historians at WPAFB were treated more favorably than DePalma based on their sex.

To be considered similarly situated as DePalma, the Historians "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Fouse v. Potter*, No. 06-4174, 2007 U.S. App. LEXIS 11042, 2007 WL 1339836 at *2 (6th Cir. May 7, 2007) (quoting *Mitchell v. Toledo Hospital*, 964

F.2d 577, 583 (6th Cir. 1992)). Here, both parties cite Kalesnik as a similarly situated male Historian because, like DePalma, Kalesnik had Marchese as a supervisor, wrote chapters for the AFRL Annual History, and was required to abide by AFI 84-101. But while DePalma argues that she was treated less favorably in regards to the issue of plagiarism, USAF contends that Kalesnik was treated just like DePalma when he too was accused of improperly citing source materials.

DePalma specifically argues that Kalesnik's work was reviewed more favorably because whereas her work was accused of "plagiarizing," Kalesnik's was only accused of "copying." (Doc. 17, at PageID# 268.) Nowhere in the record, however, does DePalma present evidence explaining the difference between the two terms or why plagiarizing should be considered worse than copying. In addition, the AFI 84-101 does not state whether plagiarizing is a worse offense than copying. The AFI 84-101 defines plagiarism as "copying text directly from source documents without using quotation marks." (AFI 84-101, 5.3. at 20) Under this definition, Kalesnik being told to rewrite his work due to "copying" stems from the same reason why DePalma was told to rewrite her work due to "plagiarizing": their supervisor determined that they improperly cited source materials. Accusing Kalesnik of only copying, therefore, did not constitute a more favorable form of treatment.

DePalma also argues that Marchese was more lenient to Kalesnik than he was to her when she and Kalesnik both pushed back against Marchese's allegations of plagiarism. Specifically, DePalma claims that while Kalesnik had no further problems with Marchese after Kalesnik successfully grieved his discipline, she received an "avalanche of criticism" from Marchese after she successfully grieved hers. (Doc. 17, at PageID# 267.) DePalma does not deny, however, that in November 2012 when DePalma received those criticisms, Kalesnik was already set to leave WPAFB for North Carolina. Neither does DePalma deny that Marchese took similar

disciplinary steps with Kalesnik as he did with DePalma when he gave Kalesnik a verbal admonishment, a written memorandum, and time to rewrite his work so that it could be approved for the 2011 AFRL Annual History. Kalesnick states that Marchese had a long history of treating everyone poorly. (Doc. 18, at PageID# 574.)[1] Treating everyone poorly is not discrimination.

There is no direct evidence that DePalma's sex was the reason for the criticisms she received. Additionally, there is no evidence that Marchese disciplined DePalma in a different manner than he disciplined Kalesnik for a similar offense.

### 2. Legitimate, Non-Discriminatory Reason for Removal

Even if DePalma could establish that she was treated less favorably than her male counterparts, USAF articulated a legitimate, non-discriminatory reason for removing her from employment. The Sixth Circuit has adopted the "honest belief" rule when examining reasons offered by employers for terminating employees. *See Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). Under this rule, "so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Id.* An employer has an honest belief in its non-discriminatory reason when it "reasonabl[y] reli[es] on the particularized facts that were before it at the time the decision was made." *Id*.

Here, the MOM that decided to remove DePalma from employment had reasonable grounds to conclude that removal was warranted. DePalma had repeated run-ins with Marchese in regards to plagiarism, despite Marchese's emails and comments that specified paragraph by paragraph where sources were improperly cited. Although DePalma had never been accused of

---

[1] Kalesnick's claim in his deposition that he believes Marchese treated DePalma poorly based on her sex, (Doc. 17, at PageID# 265), is inadmissible speculation.

plagiarizing under AFI 84-101 at her previous job, her error-free history at Whiteman Airforce Base does not necessarily mean that her writing style at WPAFB was immune to plagiarism. In the field of science and technology, DePalma admitted that writing about the subject matter at WPAFB was somewhat new to her. She also admitted that she did not understand the guidance she received from Marchese even though Marchese and other supervisors attempted to explain the guidance to her. Based on these facts, it was reasonable for Marchese and the MOM to determine that DePalma needed additional training through a CIP. When the MOM later evaluated DePalma's final CIP essay and determined that it was unsatisfactory, USAF had a legitimate, non-discriminatory reason to remove DePalma from employment.

**B. Reprisal**

DePalma claims that USAF's motion for summary judgment must be denied because there is a genuine question as to whether Marchese retaliated against DePalma by placing her on a CIP after she previously filed a EEO claim against him. (Doc. 17, at PageID# 269.) USAF argues that its motion for summary judgment should be granted because DePalma has not met her burden of establishing a prima facie case of retaliation. (Doc. 18, at PageID# 577.)

To establish a prima facie case of retaliation, DePalma must prove that: (1) she engaged in activity protected by Title VII; (2) USAF knew about her exercise of protected rights; (3) USAF took an adverse action against her; and (4) a causal connection exists between the protected activity and the adverse action. *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 412 (6th Cir. 1999); *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009).

Although there is a genuine question as to whether Marchese knew about DePalma's EEO claim at the time she was placed on a CIP, the question is moot because DePalma failed to establish the fourth element of her prima facie case. Specifically, DePalma has not established a causal connection between her submission of a EEO claim and Marchese's decision to place her on a CIP and eventually to remove her.

For DePalma to establish a causal connection, she must present evidence sufficient to raise an inference that she would not have been placed on the CIP had she not filed a EEO claim. *See Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 649 (6th Cir. 2015). Although temporal proximity between the two actions plays a role in the causation analysis, the existence of an intervening legitimate reason for the adverse employment action will "dispel[] an inference of retaliation based on temporal proximity." *See Green v. Cent. Ohio Transit Auth.*, 647 Fed. Appx. 555, 560 (6th Cir. 2016).

In *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 465-66 (6th Cir. 2012), for example, an employee raised a retaliation claim against an employer after the employer banned the employee from entering the worksite. The employee argued that the employer was unlawfully retaliating against him because the employee had previously complained about sexual harassment at the workplace. However, after discovering that the employee had absconded from the worksite following an altercation he had with the employer, the Court ruled that the ban resulted not from the sexual harassment complaint but from the employee's unauthorized departure from work. Despite the temporal proximity between the complaint and the ban, the Court found that the unauthorized departure was the legitimate reason for the ban.

Here, DePalma argues that her placement on the CIP and eventual removal from employment was the result of her submission of a EEO claim against Marchese. Temporal

proximity suggests that Marchese's decision on May 8, 2013 to place her on the CIP was retaliatory, given that DePalma's informal EEP Charge was filed just eight days earlier on April 30, 2013. However, it is clear that DePalma dealt with reoccurring accusations of plagiarism dating back to the time she received her first performance review. The record also indicates that the plagiarism issue was not resolved by the time she was placed on the CIP. Indeed, Marchese had told DePalma in March and April 2013 that her work product was unacceptable because it plagiarized. DePalma even acknowledges in her April 2013 email that Marchese would eventually place her on a "Performance Improvement Plan" due to her unacceptable work product. Given that the purpose of the CIP was to help employees with their performance at work, DePalma's reoccurring issue with plagiarism was a legitimate reason for her placement on the CIP. In other words, DePalma's work product, not her informal EEO Charge, was the cause of her placement on the CIP.

## IV. CONCLUSION

Because DePalma failed to establish that a similarly situated male Historian was treated more favorably than her, DePalma has not established a prima facie case of sex discrimination. Even if she could, DePalma's failure to pass the CIP was a legitimate, non-discriminatory reason to remove her. Furthermore, DePalma failed to establish a prima facie case of reprisal because she failed to establish a causal connection between her submission of an EEO claim and USAF's decision to place her on the CIP and eventually to remove her.

Thus, for the aforementioned reasons, this Court **GRANTS** USAF's motion for summary judgment (Doc. 15) and dismisses the case with prejudice. The captioned cause is hereby

**TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, August 01, 2017.[2]

s/Thomas M. Rose

———————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[2] The Court acknowledges the valuable contribution of judicial extern Doori Song in drafting this opinion.